## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ISABEL GARCIA,

        Plaintiff,

vs.                                                                 Civ. No. 01-1208 MV/LCS

LEPRINO FOODS, CO., ALEX LOEZA, and
JUSTIN FOLKNER,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Leprino Foods Company's

Motion for Summary Judgment, filed September 23, 2002, **[Doc. No. 40]** and Defendant Leprino

Foods Company's Motion to Strike, filed November 14, 2002, **[Doc. No. 53]**.  The Court, having

considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds

that Defendant's Motion to Strike will be **GRANTED** and Defendant's Motion for Summary

Judgment will be **DENIED**.

### FACTUAL BACKGROUND

Plaintiff Isabel Garcia is employed at Defendant Leprino Foods Company ("Leprino") in

Roswell, New Mexico.  On January 1, 2001, Plaintiff's supervisor, Defendant Alex Loeza

("Loeza"), and another foreman, Defendant Justin Faulhaber ("Faulhaber"),[1] approached

Plaintiff's work area, snickering, laughing and speaking to each other in a conspiratorial manner.

Loeza then stepped onto the platform beside Plaintiff and forcefully grabbed her left breast with

---

[1]  It appears that Defendant Justin Faulhaber is misnamed in the Complaint as "Justin
Folkner."  For purposes of clarity, the Court will refer to this defendant as Justin Faulhaber in this
Opinion.

his hand and squeezed it for about two seconds.  Immediately upon Loeza grabbing Plaintiff's breast, Loeza and Faulhaber began laughing.

Plaintiff yelled and threw up her right hand, striking either Loeza or Faulhaber.  Loeza then grabbed Plaintiff's arms and restrained her.  Plaintiff asked Loeza, "What the hell are you doing?  Why in the hell did you do that?"  Loeza began to apologize and asked Plaintiff to forgive him.  Plaintiff told Loeza to get away from her and leave her alone.  For approximately an hour thereafter, Loeza followed Plaintiff as she switched work stations.

Later that night Faulhaber approached Plaintiff in the break room and attempted to speak to her.  Plaintiff requested that Faulhaber leave her alone.  When another co-worker in the break room asked Faulhaber why Plaintiff was so upset, Faulhaber replied that Plaintiff was upset because "Alex [Loeza] grabbed her boob."

The next day Plaintiff and a co-worker who had observed part of the incident reported the incident to Darlene Parsons, a supervisor at Leprino.  The investigative memo prepared by Ms. Parsons noted that "I felt like [Plaintiff] was telling the truth . . . My instinct tells me something of a serious sexual harassment nature did happen."

After an investigation, Loeza was suspended for five days, demoted, and moved to another area to prevent Loeza from having any contact with Plaintiff.  Despite these measures, Plaintiff had two additional encounters with Loeza.  In the first incident, Plaintiff was waiting in the break room for a co-worker to walk her to her car after her shift.  Loeza, who apparently was also in the break room, told the co-worker, in a manner intended to be overheard by Plaintiff, "Yeah, you better go and walk her for me."  Plaintiff considered the statement to be offensive and sexually harassing.

The second encounter also occurred in the break room.  Plaintiff was sitting alone at a table in the break room when Loeza sat down directly across from Plaintiff, picked up the receiver from the pay phone and held it to his ear while staring at Plaintiff in an intimidating manner.  After approximately thirty to forty seconds, Loeza put the receiver down, without ever making a call or speaking a word, and left the break room.  Plaintiff did not report either of these incidents to Leprino management.

As a result of these incidents, Plaintiff felt ashamed and humiliated, suffered periodic episodes of crying, and suffered mood swings that affected her four daughters.

On July 7, 2001, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  On July 24, 2001, the EEOC issued a Notice of Right to Sue letter.  On October 22, 2001, Plaintiff filed this action alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, assault and battery (against Defendant Loeza only), and intentional infliction of emotional distress.  On September 23, 2002, Defendant Leprino moved for summary judgment on Plaintiff's sexual harassment claim.  Defendant Leprino also filed a motion seeking to strike certain materials attached to Plaintiff's response to Leprino's motion for summary judgment as immaterial, irrelevant and outside the record of this case.  Plaintiff did not file a response to the motion to strike.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable

to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322.

## DISCUSSION

### I.     Defendant's Motion to Strike

Defendant has moved to strike Exhibits 3 through 11 to Plaintiff's brief in response to

Defendant's motion for summary judgment, as well as any references to or reliance upon the testimony contained in these exhibits.  Exhibits 3 through 10 are excerpts of deposition testimony or exhibits from another sexual harassment case against Leprino arising from the conduct of Defendant Loeza.  Exhibit 11 is an affidavit from Plaintiff stating that she currently is under medical care for depression and stress.  Defendant contends that this affidavit is immaterial and irrelevant because the affidavit does not state any connection between Plaintiff's current medical care and her claims in this case.  Furthermore, Defendant notes that Plaintiff testified in her deposition that she never sought nor received any medical care as a result of the events alleged in her complaint.

Defendant does not indicate if the motion to strike is contested, as required by Local Rule 7.1(a), and Plaintiff did not file a response to this motion.  Failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.  D.N.M.LR-Civ. 7.1(b).

## II.     Defendant's Motion For Summary Judgment

Defendant Leprino moves for summary judgment on Plaintiff's claim of sexual harassment on the grounds that Plaintiff has adduced insufficient evidence for a trier of fact to find that a hostile work environment existed or to find Leprino liable for any hostile work environment that may have existed.

### A.     Standard for Analyzing Hostile Work Environment Claim

Courts recognize two distinct categories of sexual harassment claims:  *quid pro quo* sexual harassment and hostile work environment sexual harassment.  *See, e.g.*, *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987).  Here, Plaintiff alleges a hostile work

5

environment.  To survive a motion for summary judgment on a claim of hostile work environment sexual harassment, the plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  *See*, *e.g.*, *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998).

There is no mathematically precise test for determining whether the conduct challenged  by a plaintiff is sufficiently severe or pervasive to create a hostile work environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  Instead, the existence of sexual harassment should be determined "in light of the record as a whole and the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred."  *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 69 (1986) (quoting EEOC Guidelines at 29 CFR § 1604.11(b)(1985)).  Some factors to be considered in the analysis include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening.  *See, e.g., Lockard v. Pizza Hut*, 162 F.3d 1062, 1072 (10th Cir. 1998) (allowing claim based on single incident).

The plaintiff must also show that the harassing conduct was "both objectively and subjectively abusive."  *Id.* at 1071.  However, the plaintiff need demonstrate neither psychological harm nor that plaintiff's work suffered as a result of the harassment.  *Penry,* 155 F.3d at 1261.

An analysis of whether a hostile work environment exists, or existed, is inherently fact-specific and requires a close examination of all the acts and conduct that the plaintiff alleges

contributed to the hostile environment.

**B.   Plaintiff's Evidence of a Hostile Work Environment**

The crux of Defendant's Motion for Summary Judgment is that the conduct challenged by Plaintiff is simply insufficient to support a finding of a hostile work environment.  Plaintiff relies on three incidents in support of her hostile work environment claim:  1) Loeza forcefully grabbing her breast for about two seconds; 2) Loeza commenting to a co-worker, in a manner meant to be overheard by Plaintiff, that "Yeah, you better go and walk her for me;" and 3) Loeza staring at Plaintiff across a table in the break room for about thirty to forty seconds.

There is little doubt that a jury could find that Plaintiff found Loeza's conduct to be subjectively abusive.  Plaintiff has produced evidence that she was immediately upset and felt ashamed and humiliated by Loeza's conduct.  Plaintiff suffered periodic episodes of crying and has presented other evidence that the conduct caused psychological trauma and physical responses.

Whether the challenged conduct is "objectively abusive" as defined under the relevant precedent is a much closer question.  First, the Court must consider what conduct is relevant to the hostile work environment claim.  Although the first incident was undoubtedly gender-based, the second two incidents were, at most, implicitly based on gender.  Nonetheless, the Tenth Circuit has admonished that courts should not mechanically proceed through each piece of evidence of alleged harassing conduct and exclude the conduct that is not clearly gender-based. *Penry*, 155 F.3d at 1262.  Instead, a court must look at the "environment" and consider the fact that some conduct, which is not explicitly based on a plaintiff's gender, may still contribute to an abusive working environment. *Id.* at 1263 ("Even where the motive behind the alleged conduct

was not the plaintiff's gender, the court may still consider that conduct relevant when evaluating whether ambiguous conduct was in fact gender-motivated or whether gender-motivate conduct was so severe and pervasive as to create Title VII liability."). Accordingly, the Court will consider the second and third incidents, and particularly the second incident which had some gender-based overtones, as relevant to the overall consideration of the abusive nature of Plaintiff's work environment.[2]

An analysis of whether the three incidents alleged by Plaintiff could be found to create a hostile work environment best begins with an examination of decisions within the Tenth Circuit assessing comparable facts. In *Lockard*, the Tenth Circuit upheld a jury verdict in favor of a female waitress on her hostile work environment claim based upon harassing conduct by two male restaurant customers, which was sufficiently severe to create an abusive environment. *Lockard,* 162 F.3d 1062. The Court noted that the two men had been in the restaurants on several occasions and had made "filthy" comments to the plaintiff such as "I would like to get into your pants." *Id.* at 1072. One evening the men commented that plaintiff smelled nice and one of them grabbed her by the hair. *Id.* When the plaintiff later returned to the table the customer again pulled her hair, then grabbed her breast and placed his mouth on it. *Id.*

In *Creamer*, the Tenth Circuit considered whether a district court erred in entering judgment on a hostile work environment claim in favor of the defendant. *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir. 1996). The district court decision followed a bench trial where the

---

[2] It is undisputed that Plaintiff did not report the second two incidents. Plaintiff asserts that she did not report the incidents because she did not believe Leprino's management would do anything about it. While this fact could certainly suggest that Plaintiff did not subjectively view these incidents as serious, they still inform the analysis of the objective nature of the work environment.

evidence established that the plaintiff's co-worker kissed her on the cheek, inappropriately touched her, and, later when she confronted him, lifted her onto a pool table and pinned her back against the pool table. *Id.* at 169-70. The Tenth Circuit found no basis for reversing the district court because the harassment described by the plaintiff was not severe or pervasive. *Id.* at 170.

Another instructive case is *McPherson*, where Magistrate Judge Schlatter found that no reasonable jury could find a hostile work environment. *McPherson v. HCA-HealthOne, LLC*, 202 F. Supp. 2d 1156 (D.Colo. 2002). In *McPherson*, the most severe act described by the plaintiff involved a doctor grabbing her in a hug and telling her "you are so cute" and, in doing so, rubbed or brushed his hand against her breast. *Id.* at 1171. The court noted that plaintiff had presented no evidence that the doctor had cupped or fondled her breast in a sexual manner. *Id.*

The conduct described by Plaintiff falls between the types of conduct considered in *Creamer* and *McPherson* and the type of conduct described in *Lockard*. Loeza's conduct was more explicitly sexual and offensive than the conduct in *Creamer* and *McPherson* where the courts that no hostile work environment existed,[3] but was less severe than the conduct in *Lockard* where a jury finding of a hostile work environment was upheld.

Here, the effect of Loeza's conduct on Plaintiff's working environment was magnified by the nature of the employment relationship between Loeza and Plaintiff. Loeza was Plaintiff's foreperson and Plaintiff has presented evidence suggesting that Loeza had a degree of control over Plaintiff's day-to-day assignments and work area. This supervisory relationship is an important factor when considering whether a jury could find a hostile work environment based on

---

[3] Significantly, the *Creamer* case did proceed to the trier of fact and judgment was entered in favor of defendant only after the judge heard the evidence during a bench trial.

Loeza's conduct.

The Tenth Circuit recently reversed, in an unpublished opinion, a district court that concluded that a plaintiff could not establish a hostile work environment based on a high-ranking employee kissing the plaintiff twice. *Rogers v. City County Health Dept. of Oklahoma County*, No. 01-6065, 2002 WL 241296 (10th Cir. Feb. 20, 2002). In reversing, the Tenth Circuit placed significant emphasis on the fact that the harasser was the highest-ranking official in the Health Department and that he forced himself on plaintiff in a sexual and intimate manner at a time when she was specifically requesting his assistance in addressing issues related to her work. *Id.*

The Ninth Circuit similarly observed the significance of the fact that a supervisor had been the harasser in a case that Defendant extensively cites in its Motion. *Brooks v. San Mateo*, 229 F.3d 917 (9th Cir. 2000). In *Brooks*, the Ninth Circuit concluded that the plaintiff failed to establish a hostile work environment where a co-worker touched plaintiff's stomach and later put his hand under her sweater and bra and fondled her breast. *Id.* at 921. Importantly, however, the Ninth Circuit noted that its consideration of this "sexual assault" would have been different if the harasser had been a supervisor. *Id.* at 927 n.9 ("[A] sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim.").

The Court is persuaded that the three acts of harassment by Loeza, and particularly the grabbing of Plaintiff's breast, which was overtly sexual, highly offensive, physically threatening, and humiliating, are sufficient for a trier of fact to find that the conduct was sufficiently severe or

pervasive to alter the conditions of employment and create an abusive working environment.[4]

### C.   Leprino's Liability for the Hostile Work Environment

Having found that a jury could find a hostile work environment, the Court must consider whether Leprino could be held vicariously liable for the conduct.  Generally, an employer is vicariously liable for a hostile work environment where the environment is created or maintained by a supervisor with authority over the victimized employee.  *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim).  On the other hand, when the hostile work environment is created by a co-worker, liability flows to the employer only where the employer knew, or should have known, about the hostile work environment and failed to respond appropriately.  *See, e.g., Williams v. Waste Management of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

Determining whether a harasser is the victim's supervisor depends on the level of control the harasser exercises.  *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1271 (10th Cir. 1998).  Generally, the harasser is appropriately considered a supervisor if he or she has the authority to affect the terms and conditions of the victim's employment.  *See Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir.1998).

As described above, Plaintiff has adduced sufficient evidence for a reasonable trier of fact to find that Loeza had sufficient control over Plaintiff to be considered her supervisor.  The evidence

---

[4]  In reaching this conclusion, the Court has not considered any alleged harassment by Loeza of which Plaintiff was unaware when she was subjected to the hostile work environment. *Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 782 (10th Cir. 1995).

permits a finding that Loeza controlled Plaintiff's assignments, Plaintiff's breaks, instructed

Plaintiff on how to perform her job, and determined with whom Plaintiff worked.  Accordingly,

Defendant could be liable for the hostile work environment Loeza created and maintained for

Plaintiff.[5]

### D.     Plaintiff's Claim of Intentional Infliction of Emotional Distress

Defendant asserts that Plaintiff has failed to produce sufficient evidence in support of her

claim for intentional infliction of emotional distress.  A defendant may be held liable for intentional

infliction of emotional distress where he or she intentionally or recklessly causes severe emotional

distress through extreme and outrageous conduct.  *Dominguez v. Stone*, 97 N.M. 211, 214

(Ct.App 1981).  The Court finds at this stage in the proceedings that Plaintiff has produced

sufficient evidence that Loeza's conduct has caused severe emotional distress with which Plaintiff

has had difficulty coping.[6]  Further, the conduct discussed above that the Court  found sufficient

to support a hostile work environment claim is sufficiently extreme and outrageous to support an

intentional infliction of emotional distress claim.

Accordingly, the Court finds that Plaintiff has adduced sufficient evidence for a jury to find

in her favor on her claim of intentional infliction of emotional distress.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike, filed November 14,

---

[5]  In its Motion, Defendant does not suggest that it is entitled to judgment on the grounds of any affirmative defense.

[6]  It is, of course, possible that the trier of fact may ultimately find that, as suggested by Defendant, Plaintiff's seeking of mental health care was more related to the pursuit of this lawsuit than actual medical needs.  However, in viewing the evidence in the light most favorable to Plaintiff, Loeza's conduct has had a significant impact on Plaintiff's emotional well-being.

2002, **[Doc. No. 53]** is **GRANTED**.  Exhibits 3 through 11 to Plaintiff's Response to Defendant's

Motion for Summary Judgment are hereby stricken.

      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, filed

September 23, 2002, **[Doc. No. 40]** is **DENIED.**

      Dated this 1st day of June, 2004.

 

                                                **MARTHA VÁZQUEZ**
                                                **U. S. DISTRICT COURT JUDGE**

Attorneys for Plaintiff:
      Lauro D. Silva, Esq.
      Narciso Garcia, Jr., Esq.

Attorneys for Defendant Leprino:
      Theresa W. Parrish, Esq.
      Michael G. Bohn, Esq.